**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

|  |  |
|---|---|
| UMG RECORDINGS, INC., *et al.*,<br><br>         *Plaintiffs*,<br><br>     v.<br><br>CHARTER COMMUNICATIONS, INC.,<br><br>         *Defendant*. | Case No. 1:21-cv-02020-RM-KLM |

**DEFENDANT'S MOTION TO DISMISS PLAINTIFFS'**
**COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

## TABLE OF CONTENTS

**Page**

CERTIFICATE OF CONFERRAL ........................................................................................1

PRELIMINARY STATEMENT ...........................................................................................1

FACTUAL ALLEGATIONS .................................................................................................2

LEGAL STANDARD ............................................................................................................4

ARGUMENT .........................................................................................................................4

I.      PLAINTIFFS' CONTRIBUTORY LIABILITY CLAIM SHOULD BE
        DISMISSED ..............................................................................................................4

II.     PLAINTIFFS' VICARIOUS LIABILITY CLAIM SHOULD BE DISMISSED ...............9

        A.      Plaintiffs Do Not Adequately Allege Direct Financial Interest ............................10

        B.      Plaintiffs Do Not Adequately Allege Supervision .................................................14

CONCLUSION.....................................................................................................................17

# **TABLE OF AUTHORITIES**

**Page**

**Cases**

*Adobe Sys. Inc. v. Canus Prods., Inc.*,
    173 F. Supp. 2d 1044 (C.D. Cal. 2001) ...................................................................... 10

*Apl Microscopic, LLC v. David A. Steenblock, D.O., Inc.*,
    2021 WL 3008294 (C.D. Cal. July 8, 2021)................................................................ 14

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)....................................................................................................... 4

*BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*,
    881 F.3d 293 (4th Cir. 2018) ......................................................................................... 8

*Ellison v. Robertson*,
    357 F.3d 1072 (9th Cir. 2004) ....................................................................... 10, 11, 13, 14

*Gershwin Pub. Corp. v. Columbia Artists Mgmt., Inc.*,
    443 F.2d 1159 (2d Cir. 1971).......................................................................................... 9

*Luvdarts, LLC v. AT & T Mobility, LLC*,
    710 F.3d 1068 (9th Cir. 2013) ...................................................................................... 14

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
    545 U.S. 913 (2005)................................................................ 2, 3, 5, 6, 7, 8, 9, 10, 12

*Montes v. Live Nation*,
    2018 WL 4964323 (C.D. Cal. May 9, 2018) ................................................................ 14

*Music Force, LLC v. Sony Music Holdings Inc.*,
    2020 WL 5733258 (C.D. Cal. Aug. 12, 2020).............................................................. 15

*Perfect 10, Inc. v. Amazon.com, Inc.*,
    508 F.3d 1146 (9th Cir. 2007) ................................................................................ 16, 17

*Phillips v. Bell*,
    365 F. App'x 133 (10th Cir. 2010) ............................................................................... 12

*Robbins v. Oklahoma*,
    519 F.3d 1242 (10th Cir. 2008) ...................................................................................... 4

*Routt v. Amazon.com, Inc.*,
    584 F. App'x  713 (9th Cir. 2014) ................................................................................ 15

*Sellitto v. Vail Corp.*,
    2019 WL 1489261 (D. Colo. Apr. 4, 2019)............................................................. 4, 15

*Shell v. Am. Fam. Rts. Ass'n*,
    2010 WL 1348548 (D. Colo. Mar. 31, 2010) ........................................................ 10, 14

*Shell v. Henderson*,
    2013 WL 2394935 (D. Colo. May 31, 2013)........................................................... 6, 9

*Sony Corp. of Am. v. Universal City Studios*,
    464 U.S. 417 (1984)........................................................................................ 4, 5, 6, 9

*UMG Recordings, Inc. v. Bright House Networks, LLC*,
    2020 WL 3957675 (M.D. Fla. July 8, 2020) ................................................ 10, 11, 12, 13

*UMG Recordings, Inc. v. Grande Commc'ns Networks, LLC*,
    384 F. Supp. 3d 743 (W.D. Tex. 2019).................................................................. 8

*UMG Recordings, Inc. v. Grande Commc'ns Networks, LLC*,
    2018 WL 1096871 (W.D. Tex. Feb. 28, 2018), *subsequent history omitted*.............. 12, 14

*UMG Recordings, Inc. v. RCN Telecom Servs., LLC*,
    2020 WL 5204067 (D.N.J. Aug. 31, 2020) ...................................................... 8

*VHT, Inc. v. Zillow Grp., Inc.*,
    918 F.3d 723 (9th Cir. 2019) .................................................................. 14, 15

*Viesti Assocs., Inc. v. Pearson Educ., Inc.*,
    2013 WL 4052024 (D. Colo. Aug. 12, 2013) ........................................... 5, 9, 15

*Warner Recs. Inc. v. Charter Commc'ns, Inc.*,
    454 F. Supp. 3d 1069 (D. Colo. 2020)............................................... 13, 16, 17

## **Rules**

Fed. R. Civ. P. 12 ................................................................................ 1, 4, 14, 17

Charter Communications, Inc. ("Charter") respectfully submits this motion to dismiss ("Motion") the Complaint ("Compl.") [ECF 1] filed by UMG Recordings Inc., et al. ("Plaintiffs") pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted.

## CERTIFICATE OF CONFERRAL

Pursuant to the Court's Practice Standards Part N.2.a, counsel for Charter conferred with counsel for Plaintiffs regarding the pleading deficiencies detailed in this Motion and confirmed that Plaintiffs were unwilling to amend the Complaint to address the deficiencies identified by Charter.  This conferral included e-mail correspondence between counsel on September 9 and 13, 2021, and a telephonic conference between counsel on September 14, 2021, during which Charter's counsel provided the grounds for the instant Motion and determined that the parties are at an impasse that requires judicial resolution.

## PRELIMINARY STATEMENT

Plaintiffs are major music labels and publishers who allege that certain of Charter's customers used the Internet to download and distribute copyrighted works that Plaintiffs purport to own.  One might expect Plaintiffs to sue these alleged infringers.  Instead they have chosen to sue the Internet.

Charter is one of the nation's largest Internet Service Providers ("ISP"), colloquially referred to by some as a cable company.  Plaintiffs accuse Charter of both contributory and vicarious copyright infringement based solely on Charter's provision of Internet service to its customers.  Both claims warrant dismissal.  The United States Supreme Court has held that where a company offers a product or service that has substantial non-infringing uses—as Charter's Internet service indisputably does—copyright plaintiffs must allege that the defendant took active

1

steps with the intent of encouraging infringement. *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 937 (2005) ("*Grokster*"). Plaintiffs' contributory infringement claim should be dismissed because Plaintiffs do not allege that Charter encouraged, induced, or took affirmative steps with the intent to foster infringement of Plaintiffs' works. Rather, Plaintiffs allege that Charter failed to disconnect users' Internet service when it received notices from Plaintiffs accusing certain users of infringement. These allegations are insufficient under *Grokster* to state a claim of contributory infringement. Relatedly, Plaintiffs' claim for vicarious liability fails as a matter of law because Plaintiffs do not allege facts sufficient to show that Charter profited directly from infringement or had a right and ability to supervise the alleged infringement.

## FACTUAL ALLEGATIONS

Charter is one of the nation's "largest Internet service providers." Compl. ¶ 3. It provides Internet services to millions of consumers throughout the nation. *Id.* ¶¶ 3, 52. Plaintiffs are "leading music publishers" and "two of the largest record companies in the world." *Id.* ¶¶ 49, 19. "Over the past two decades," Plaintiffs have "turned to litigation"—including suing individuals— to combat online music piracy. *Id.* ¶¶ 60-62. Recently, Plaintiffs shifted their litigation efforts to suing companies that connect customers to the Internet. *Id.* ¶¶ 1, 69.

One of the many activities available to someone using the Internet is the ability to download music. *Id.* ¶¶ 56-58. According to the Complaint, "peer-to-peer ('P2P') distribution systems," which are accessible via the Internet, have been at the core of facilitating "online piracy of music." *Id.* ¶¶ 56-57. "Early P2P services" like "Napster and KaZaA" have been replaced by a "uniquely efficient" protocol called BitTorrent, which permits individual users to upload and

download content.  *Id.* ¶¶ 57-58.  Individuals can "download copyrighted music from other network users … and end up with complete digital copies of any music they desire."  *Id.* ¶ 57.

Plaintiffs' claims against Charter concern individual "subscriber's infringing activity" via "BitTorrent, or other P2P networks" between July 26, 2018 and July 26, 2021.  *Id.* ¶¶ 7, 77. Plaintiffs do not allege that Charter has any connection to or involvement with P2P networks, or that Charter encouraged traffic to P2P networks.  Nor do Plaintiffs allege that Charter was aware of any of the alleged acts of infringement before they occurred.

Instead, Plaintiffs assert that they sent 150,000 notices "identifying specific Charter subscribers infringing Plaintiffs' copyrighted works," but that Charter did not subsequently disconnect those subscribers' Internet connection based solely on the allegations of past infringement contained in the notices.  *Id.* ¶¶ 70-72.  Plaintiffs do not allege that Charter had any way to verify the accuracy of the accusations of infringement made in the notices—nor could they plausibly make any such allegation.  Nor do Plaintiffs allege that Charter's reasonable policy to not terminate an entire household's or business's access to the Internet based on allegations of infringement it could not verify was adopted with the intent of promoting infringement.  Rather, Plaintiffs allege that Charter's failure to terminate customers' access to the Internet based solely upon the receipt of these unverifiable notices is in and of itself sufficient evidence of Charter's culpable intent to promote copyright infringement and therefore states a claim under *Grokster*.

Plaintiffs also allege that the failure to terminate customers who were the subject of Plaintiffs' accusations "was a draw to subscribers to purchase Charter's services."  *Id.* ¶ 73. Further, Plaintiffs claim that Charter "touted how its service enables subscribers to download and

upload large amounts of content" because it "told subscribers that its Internet service 'has the speed you need for everything you do online.'"  *Id.* ¶ 53.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "[t]he burden is on the plaintiff to frame a complaint with enough factual matter (taken as true) to suggest that he or she is entitled to relief.  Factual allegations must be enough to raise a right to relief above the speculative level." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quotations and citation omitted).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)).  "Courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"  *Sellitto v. Vail Corp.*, 2019 WL 1489261, at *1 (D. Colo. Apr. 4, 2019) (Moore, J.) (quoting *Twombly*, 550 U.S. at 555).  "The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief."  *Robbins*, 519 F.3d at 1247.

## ARGUMENT

## I.     PLAINTIFFS' CONTRIBUTORY LIABILITY CLAIM SHOULD BE DISMISSED

Plaintiffs' contributory liability claim should be dismissed on the grounds that the mere sale of a product or service "does not constitute contributory infringement if the product [or service] is … capable of substantial noninfringing uses."  *Sony Corp. of Am. v. Universal City Studios*, 464 U.S. 417, 442 (1984) ("*Sony*").  As a result, the law "bar[s] secondary liability based

on presuming or imputing intent to cause infringement solely from the design or distribution of a product capable of substantial lawful use." *Grokster*, 545 U.S. 913, 933 (2005).

In general, "[t]o state a claim of contributory copyright infringement, a plaintiff must allege that the defendant 'with knowledge of the infringing activity' induced, caused, or materially contributed to the infringing conduct of another." *Viesti Assocs., Inc. v. Pearson Educ., Inc.*, 2013 WL 4052024, at *7 (D. Colo. Aug. 12, 2013). However, the United States Supreme Court's rulings in *Grokster* and *Sony* limited the circumstances under which a claim of contributory infringement can lie against a party selling a product or service capable of substantial noninfringing use. "An allegation that a defendant merely provided the means to accomplish an infringing activity is insufficient to allege a claim for contributory infringement." *Viesti*, 2013 WL 4052024, at *7 (citing *Grokster*, 545 U.S. at 937). Under *Grokster*, it is insufficient to premise a contributory liability claim on "mere knowledge of infringing potential or of actual infringing uses." *Grokster*, 545 U.S. at 937. Rather, to adequately allege a claim for contributory infringement, a plaintiff must prove that the defendant distributed a device or service with the intention of fostering infringement:

> [O]ne who distributes a device [or service] with the ***object*** of promoting its use to infringe copyright, as shown by ***clear expression*** or other ***affirmative steps*** taken to foster infringement, is liable for the resulting acts of infringement by third parties. We are, of course, mindful of the need to keep from trenching on regular commerce or discouraging the development of technologies with lawful and unlawful potential. Accordingly, just as *Sony* did not find intentional inducement despite the knowledge of the VCR manufacturer that its device could be used to infringe, 464 U.S., at 439, n. 19, 104 S.Ct. 774, ***mere knowledge of infringing potential or of actual infringing uses would not be enough*** here to subject a distributor to liability. ***Nor would ordinary acts incident to product distribution***, such as offering customers technical support or product updates, support liability in themselves. The inducement rule, instead, premises liability on purposeful, culpable expression and conduct, and thus does nothing to compromise legitimate commerce or discourage innovation having a lawful promise.

*Id.* at 936–37 (emphasis added); *see also Shell v. Henderson*, 2013 WL 2394935, at *11 (D. Colo. May 31, 2013) ("A showing of contributory infringement requires a demonstration of 'an affirmative intent' to infringe, such as evidence of 'active steps taken to encourage direct infringement' by third parties.") (quoting *Grokster*, 545 U.S. at 936). A complaint must allege facts showing clear evidence of intent to encourage infringement, as a contributory infringement claim cannot rest on a "mere[] … failure to take affirmative steps to prevent infringement." *Grokster*, 545 U.S. at 939 n.12.

When considering a contributory liability claim against Sony based on the allegation that "some individuals had used [Sony's] Betamax video tape recorders (VTR's) to record some of respondents' copyrighted works which had been exhibited on commercially sponsored television," the Supreme Court ruled that there was "no basis in the Copyright Act upon which respondents can hold petitioners liable for distributing VTR's to the general public." *Sony*, 464 U.S. at 420-21. Most notably, it held that "the sale of copying equipment, like the sale of other articles of commerce, does not constitute contributory infringement if the product is widely used for legitimate, unobjectionable purposes. Indeed, it need merely be capable of substantial noninfringing uses." *Id.* at 442.

The defendants in *Grokster*, who distributed free computer software, presented a different scenario: their "business models … confirm[ed] that their ***principal object*** was use of their software to download copyrighted works." *Grokster*, 545 U.S. at 926 (emphasis added). Each defendant "showed itself to be aiming to satisfy a known source of demand for copyright infringement, the market comprising former Napster users," and, indeed, designed their entire products and customer outreach around attracting these known infringers. *Id.* at 939. The Court

vacated a summary judgment ruling for defendants, but made clear that "in the absence of other evidence of intent, a court would be unable to find contributory infringement liability merely based on a failure to take affirmative steps to prevent infringement, if the device otherwise was capable of substantial noninfringing uses." *Id.* at 939 n.12.

Here, Plaintiffs do not adequately allege a claim of contributory copyright infringement. Although the Complaint contains boilerplate language that Charter was "contributing to … its subscribers' infringement" (Compl. ¶¶ 6, 68), those allegations merely recite an element of contributory copyright infringement but offer no factual assertions describing how Charter allegedly fostered or encouraged infringement.  At best, Plaintiffs allege that Charter was aware that specific customer accounts were being accused by Plaintiffs of infringing copyrighted works on the Internet in the past and that Charter did not actively disconnect those users' Internet service based solely on the receipt of these notices.  *See* Compl. ¶ 78 ("Charter facilitated, encouraged, and materially contributed to such infringement by continuing to provide its network and the facilities necessary for its subscribers to commit repeated infringements.").  And Plaintiffs do not allege that Charter had any means of verifying the truth of the allegations set forth in the notices. Thus, Plaintiffs allegations of Charter's alleged knowledge are insufficient under *Grokster* because "mere knowledge of infringing potential or of actual infringing uses" is not enough to establish liability.  *Grokster*, 545 U.S. at 937.  It is also insufficient for Plaintiffs to allege that Charter's performance of "ordinary acts incident to product distribution," such as continuing an alleged infringer's subscription to the Internet, can support a contributory liability claim.  *Id*.

Some out of circuit courts have incorrectly applied *Grokster* in cases involving ISPs that, like Charter, merely provide a connection to the Internet, indicating that a failure to terminate the

Internet access of specific customer accounts accused of infringement could be evidence of the ISP's intent to promote infringement. *See, e.g.*, *UMG Recordings, Inc. v. RCN Telecom Servs., LLC*, 2020 WL 5204067, at *8-9 (D.N.J. Aug. 31, 2020); *UMG Recordings, Inc. v. Grande Commc'ns Networks, LLC*, 384 F. Supp. 3d 743, 767 (W.D. Tex. 2019); *BMG Rights Mgmt. (US) LLC v. Cox Inc.* 881 F.3d 293, 307-08 (4th Cir. 2018). This approach is wrong for at least two reasons. First, continuing to provide a service to customers is an "ordinary act[] incident to product distribution." *Grokster*, 545 U.S. at 937. For ISPs, this *is* product distribution. Second, a failure to terminate a customer's access to the Internet based solely upon unverified (and unverifiable) notices alleging past infringement does not demonstrate the requisite intent by an ISP to encourage infringement. *Grokster* expressly holds that the evidence of an ISP's intent must go "beyond a product's characteristics *or the knowledge that it may be put to infringing uses*, *and show[] statements or actions directed to promoting infringement*." *Id.* at 935 (emphasis added).[1] A correct application of *Grokster* thus forecloses the possibility that an ISP's failure to terminate internet access for specific customers accused of copyright infringement *on its own* can establish contributory liability. Notably, Plaintiffs do not allege that Charter's policy to not terminate customer accounts based solely upon the receipt of notices containing unverifiable accusations of infringement was adopted by Charter *for the purpose of promoting copyright infringement*, nor could they plausibly make any such allegation.

---

[1] *BMG* also improperly stretches *Groskter* to suggest that "requisite intent may … be presumed according to the rules of fault-based liability derived from the common law," *BMG*, 881 F.3d at 307 (quotations omitted), ignoring this directive from *Grokster* that evidence must "show[] statements or actions directed to promoting infringement," *Grokster*, 545 U.S. at 935.

In an attempt to sidestep the stringent requirements of *Grokster*, Plaintiffs might focus on the elements of a traditional contributory infringement claim, as articulated in the Second Circuit's *Gershwin Publishing Corporation v. Columbia Artists Management, Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971), as Plaintiffs have in other cases. But to assess the elements of a contributory infringement claim without heeding the Supreme Court's holdings in both *Sony* and *Grokster* that require clear allegations (and ultimately proof) of ***culpable intent to cause infringement*** would be to read these controlling decisions out of the law. Plaintiffs are required to allege plausible facts that demonstrate a clear intent by Charter to actively promote infringement by its customers. Plaintiffs' allegations fail to meet the standard established in *Grokster*, and their contributory infringement claim should be dismissed. *See Viesti*, 2013 WL 4052024, at *7 (dismissing contributory infringement claim where textbook publisher allegedly sent copyrighted photographs to others with knowledge that some would make infringing use of the photos).[2]

## II.      PLAINTIFFS' VICARIOUS LIABILITY CLAIM SHOULD BE DISMISSED

"For vicarious infringement, a plaintiff must allege that the defendant (i) had the right and ability to supervise the infringing activity or infringer; and (ii) possessed a direct financial interest

---

[2]   Plaintiffs do not allege that Charter's generalized advertising about the speed, reliability, or other attributes of its Internet service (Compl. ¶ 53) induced infringement. Nor could they. This generalized advertising does not rise to the level of a "clear expression" of intent to infringe copyrighted material. *See Viesti*, 2013 WL 4052024, at *7 ("Without factual allegations describing instances of Pearson encouraging or promoting third parties to infringe Viesti's photographs, the complaint does not permit the Court to infer more than the mere possibility of Pearson's misconduct."); *see also Henderson*, 2013 WL 2394935, at *12 (courts find contributory infringement where "the defendants have affirmatively promoted their services' suitability for infringing copyrights or affirmatively requested that users obtain and upload specific copyrighted works"). Because fast and reliable Internet is desirable for virtually anyone—and in many professions is a job requirement—advertising about these aspects of Internet services does not evidence an intent to promote infringement.

in the exploited copyrighted materials." *Shell v. Am. Fam. Rts. Ass'n*, 2010 WL 1348548, at *16 (D. Colo. Mar. 31, 2010).  Plaintiffs fail to allege either of these elements.

A.   **Plaintiffs Do Not Adequately Allege Direct Financial Interest**

Establishing vicarious liability requires that Charter "possessed a direct financial interest in the exploited copyrighted materials."  *Id.*; *see also Grokster*, 545 U.S. at 930 n.9 (defendant must "profit[] directly from the infringement").  "The essential aspect of the 'direct financial benefit' inquiry is whether there is a causal relationship between the infringing activity and any financial benefit a defendant reaps."  *Ellison v. Robertson*, 357 F.3d 1072, 1079 (9th Cir. 2004).  Further, the "direct financial interest" cannot be "just an added benefit."  *Id.*  Plaintiffs' allegations that Charter received a "direct financial benefit from its customers' infringement" (Compl. ¶¶ 5, 87) do not meet this standard and were rejected in a substantially identical case.  *See UMG Recordings, Inc. v. Bright House Networks, LLC*, 2020 WL 3957675 (M.D. Fla. July 8, 2020).

In evaluating the Complaint under the applicable legal standard for vicarious liability, it is important to note that Plaintiffs do not allege that Charter's allegedly infringing subscribers are drawn to Charter's network as a result of the presence of unauthorized musical recordings on the Internet.  This is fatal to Plaintiffs' claim because the law requires that the draw must be "the infringing products" themselves.  *Adobe Sys. Inc. v. Canus Prods., Inc*., 173 F. Supp. 2d 1044, 1051 (C.D. Cal. 2001); *see also Ellison*, 357 F.3d at 1078 ("Financial benefit exists where the availability of infringing material acts as a 'draw' for customers.") (quotations omitted).  Here, Plaintiffs do not allege the ability to download their specific copyrighted works at issue in this lawsuit on peer-to-peer networks served as a draw to Charter's subscribers.  Instead, Plaintiffs' allegations focus on the alleged draw of certain purported actions by Charter, not the draw of the

10

allegedly infringing music recordings. For example, Plaintiffs allege "Charter's *failure to police* its infringing subscribers adequately was a draw to subscribers." Compl. ¶ 73 (emphasis added). But, as the court in *Bright House* correctly recognized, "'failure to police' … is not the test: the test is whether users are drawn to Bright House by the *availability of infringing content*." 2020 WL 3957675, at *5 (quoting Complaint) (emphasis in original). Here, Charter's actions could not have served as a draw to new subscribers since there is no allegation, or any basis to infer, that potential subscribers would have had any knowledge about Charter's alleged "failure to police." *See Ellison*, 357 F.3d at 1079 (evidence that customers called provider to inquire if it blocked access to certain services insufficient to survive summary judgment). The idea that the specific subscribers who were infringing the specific works-in-suit during the claims period were "drawn" to continue purchasing Internet service or increasing their bandwidth because they gleaned Charter's alleged "failure to police," and did not continue doing so for some other reason reasons like the inconvenience of changing networks, relies on a series of inferences that are too implausible to survive a motion to dismiss, even when viewed in the light most favorable to Plaintiffs.

Even if it were sufficient for Plaintiffs' allegations to focus on Charter's conduct, Plaintiffs' claim must be dismissed because they do not allege that there was anything unique about the Internet access Charter offered relative to other ISPs. *See Bright House*, 2020 WL 3957675, at *5 ("Plaintiff[s] do not allege that there is anything unique about the service Bright House offers as a portal to the internet or as a portal to this alleged contraband content."); *UMG Recordings, Inc. v. Grande Commc'ns Networks, LLC*, 2018 WL 1096871, at *10 (W.D. Tex. Feb. 28, 2018), *subsequent history omitted* (dismissing vicarious liability claim based on allegation "that the

existence of music and the BitTorrent protocol is the draw" because that "would impose liability on every ISP, as the music at issue is available on the Internet generally, as is the BitTorrent protocol, and is not something exclusively available through Grande's services").

Plaintiffs' allegation that Charter's advertisements for "blazing-fast Internet speeds" enticed allegedly infringing users (Compl. ¶ 53) is too implausible to survive a motion to dismiss; high-speed access is a feature that all subscribers desire and all ISPs tout. *See Bright House*, 2020 WL 3957675, at *5 (rejecting "dog-whistle theory" that defendant "advertises faster internet speeds to surreptitiously entice the prospective infringer"). It is "not readily apparent or plausibly alleged that an internet thief would be 'drawn' by the efficiency of internet service any more than the average law-abiding purchaser of copyrighted content. All users presumably seek faster, more reliable internet service." *Id.*; *see also Phillips v. Bell*, 365 F. App'x 133, 137 (10th Cir. 2010) (court is called on to "draw *reasonable* inferences" in plaintiffs' favor) (emphasis added). Similarly, Plaintiffs do not articulate any reason why an advertisement about the ability to "download 8 songs in 3 seconds" (Compl. ¶ 53) would be understood to suggest that a subscriber had a unique ability to quickly download infringing works on Charter's network as opposed to legitimate sources. Plaintiffs' allegations that Charter "fail[ed] to terminate the accounts of specific recidivist infringers" and "condoned [subscribers'] illegal activity" fare no better, as Plaintiffs do not allege that Charters' purported conduct was different from that of other ISPs, or that consumers sought out Charter's services in particular (as compared to competing services), to infringe the asserted copyrighted material. Compl. ¶¶ 5, 55.[3]

---

[3]   At best, given Plaintiffs' concession that illegal recordings are widely available to anyone with Internet access (Compl. ¶ 56 ("the level of copyright infringement on the Internet is staggering")

Charter is mindful of the fact that the Court in *Warner Records Inc. v. Charter Communications, Inc.*, 454 F. Supp. 3d 1069 (D. Colo. 2020), reached the opposite conclusion at the pleading stage. However, Charter respectfully submits that the vicarious liability claim in this Complaint should nevertheless be dismissed, as it was in the *Bright House* case. *Warner Records* focused on whether the Plaintiffs had adequately pled that the defendant had received a truly "direct" financial benefit, in light of the fact that there were no allegations that access to infringing content was the principal draw for subscribers. *Id.* at 1074. Charter submits that the better view is the one articulated in *Bright House* and preceding cases, namely that the direct financial benefit prong requires that "the availability of infringing content … provides the *main* customer 'draw' to the service." *Bright House*, 2020 WL 3957675, at *5 (brackets and quotations omitted). That is because to conclude otherwise—that the draw of infringement need only be a draw—"reads the limiting term 'direct' out of the test." *Id.* at *4. Multiple courts have therefore held that the supposed draw of the infringing activity cannot be "just an added benefit." *Ellison*, 357 F.3d at 1079; *see also Grande*, 2018 WL 1096871, at *10 (W.D. Tex. Feb. 28, 2018) (plaintiffs "must plead that customers subscribed to [defendant ISP]'s services *because of* the specific infringing material") (emphasis added). Here, Plaintiffs fail to allege facts sufficient to show that Charter reaped financial benefits from the alleged infringement (*e.g.*, Compl. ¶¶ 5, 53, 73, 87), as they do not contend that access to allegedly infringing content was the *main* draw for Charter's subscribers

---

(citing *Grokster*)), individuals were drawn to the Internet generally—and not to Charter—which can be accessed through any ISP or open WiFi networks.

to gain Internet access through Charter.  Accordingly, Plaintiffs have failed to allege that Charter

had a direct financial interest in the alleged infringing activity.[4]

### B.    Plaintiffs Do Not Adequately Allege Supervision

To adequately plead a claim for vicarious liability, Plaintiffs must also allege facts

sufficient to show that Charter "had the right and ability to supervise the infringing activity or

infringer." *Am. Fam. Rts. Ass'n*, 2010 WL 1348548, at *16.  This element "requires both a legal

right to stop or limit the directly infringing conduct, as well as the practical ability to do so." *VHT,*

*Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 746 (9th Cir. 2019) (quotations omitted).  Courts grant Rule

12(b)(6) motions to dismiss where plaintiffs fail to sufficiently allege supervision over allegedly

infringing activity.  *See, e.g.*, *Luvdarts, LLC v. AT & T Mobility, LLC*, 710 F.3d 1068, 1072 (9th

Cir. 2013) (affirming dismissal of vicarious infringement claim because "Luvdarts's failure to

allege that the Carriers have at least something like a capacity to supervise is fatal to a claim of

vicarious liability"); *Apl Microscopic, LLC v. David A. Steenblock, D.O., Inc.*, 2021 WL 3008294,

at *4-5 (C.D. Cal. July 8, 2021) (dismissing vicarious infringement claim because "there is no

substantial evidence suggesting that Defendant had the right and ability to supervise the allegedly

infringing activity"); *Montes v. Live Nation*, 2018 WL 4964323, at *4 (C.D. Cal. May 9, 2018)

(dismissing vicarious infringement claim because plaintiff failed to allege right and ability to

supervise allegedly infringing activity).

Plaintiffs have failed to plead factual allegations showing that Charter has the ability to

supervise the online activity of allegedly infringing subscribers.  Importantly, there are no factual

---

[4]    Any question of how much of Charter's business does or does not come from infringing
subscribers is a red herring.  The relevant question is how important access to infringing material
was to Charter's subscribers.  *See Ellison*, 357 F.3d at 1079.

allegations showing that Charter has any ability to view, access, or monitor its customers' Internet activity, much less any purportedly infringing activity.   Nor does the Complaint allege facts showing that Charter has the "technical ability to screen out" infringing content.  *VHT*, 918 F.3d at 746.  Plaintiffs instead offer conclusory allegations concerning Charter's ability to supervise the activity of its subscribers.  *See* Compl. ¶ 87 ("Charter has the legal and practical right and ability to supervise and control the infringing activities that occur through the use of its network.").  But, "[c]onclusory allegations are insufficient" to survive a motion to dismiss.  *Sellitto*, 2019 WL 1489261, at *1; *see also Viesti*, 2013 WL 4052024, at *8 ("Viesti's allegations … are insufficient because they are nothing more than a recitation of one element of a vicarious copyright infringement claim.").

Moreover, Plaintiffs' allegation that "Charter was empowered to exercise its right and ability to suspend or terminate a customer's Internet access" based upon its "Terms of Service/Policies" (Compl. ¶ 71) does not speak to Charter's ability to *supervise* its subscribers activity as it occurs.  Every ISP has the power to turn off subscribers' service, much like an electric company can turn off a customer's electricity.  But neither Charter nor the electric company has the ability to *supervise* what customers actually do with the service as they are doing it.  Alleging the ability to terminate is not enough to survive a motion to dismiss an inadequately pleaded vicarious liability claim.  *See Routt v. Amazon.com, Inc.*, 584 F. App'x 713, 715-16 (9th Cir. 2014) ("[W]hile Amazon may have had the right and ability to terminate the accounts of the infringing Associates, Routt has not adequately alleged that Amazon exercises any direct control over those Associates' activities.  In the absence of such allegations, Amazon cannot be held vicariously liable for its Associates' conduct."); *Music Force, LLC v. Sony Music Holdings Inc.*, 2020 WL 5733258,

15

at *3 (C.D. Cal. Aug. 12, 2020) ("If plaintiff's argument is that Sony can stop Lil Nas X's infringement by threatening to terminate their agreement, such an argument is unpersuasive because the right to terminate services or a contract with an infringer does not amount 'to a right and ability to supervise the infringing conduct.'").  Although there are other cases "in which ISPs were found to have the practical ability to stop or limit infringement" based on termination, *Warner Recs.*, 454 F. Supp. 3d at 1079 (collecting cases), those courts did not find that ISPs can actively supervise the alleged infringement as it occurs or whether such action would actually halt the infringement.[5]  And, here, Plaintiffs do not (and cannot) allege that termination restricts access to the infringing content.  It is common sense that terminating a customer's Internet connection does not prevent a customer from finding another source of Internet access, nor does it impact the availability of the allegedly infringing content hosted via peer-to-peer networks or programs.  Charter has no more ability to block access to peer-to-peer networks than a subscriber's electric company.

Further, when considering the extent to which a party has the ability to supervise the infringing activity or infringer, courts distinguish between parties operating a "closed system" and parties that generally provide users with access to the Internet.  For instance, in *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146 (9th Cir. 2007), the Ninth Circuit stated that Napster could supervise alleged infringement because it could "prevent its users from engaging in the infringing activity of uploading file names and downloading Napster users' music files through the Napster

---

[5]     More significantly, the logical extension of these rulings is that all ISPs would always have the right and ability to supervise any alleged infringing activity or infringer that took place on the Internet.  The effect of these rulings renders the "supervision" prong of the vicarious infringement test meaningless.

system," while Google lacked supervisory powers because it "cannot stop any of the third-party websites from reproducing, displaying, and distributing unauthorized copies of Perfect 10's images because that infringing conduct takes place on the third-party websites." *Id.* at 1174. Here, Plaintiffs' allegations do not distinguish Charter from Google. Charter cannot supervise or control subscribers' general access to infringing content available through third parties any more than Google could. That "Charter, unlike Google, can terminate its users' ability to access the internet ***through Charter***," *Warner Recs.*, 454 F. Supp. 3d at 1078 (emphasis added), is not a relevant distinction. Based on Plaintiffs' allegations, both Charter and Google merely provide avenues through which individuals could access infringing content. But, neither entity oversees or controls the availability of music on the Internet. Accordingly, Plaintiffs' vicarious liability claim should be dismissed.

## CONCLUSION

WHEREFORE, for all of the foregoing reasons, Charter respectfully requests that the Court grant its motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), and grant Charter such other and further relief as the Court deems just and proper.

Dated:  September 17, 2021   Respectfully submitted,

     By: /s/ *Andrew H. Schapiro*
     Andrew H. Schapiro
     QUINN EMANUEL URQUHART & SULLIVAN, LLP
     191 N. Wacker Drive, Suite 2700
     Chicago, IL 60606
     (312) 705-7400 (telephone)
     (312) 705-7401 (facsimile)
     Email: andrewschapiro@quinnemanuel.com

     Charles K. Verhoeven
     David Eiseman
     Linda Brewer
     QUINN EMANUEL URQUHART & SULLIVAN, LLP
     50 California Street, 22nd Floor
     San Francisco, CA 94111
     (415) 875-6600 (telephone)
     (415) 875-6700 (facsimile)
     Email: charlesverhoeven@quinnemanuel.com
     Email: davideiseman@quinnemanuel.com
     Email: lindabrewer@quinnemanuel.com

     Dylan I. Scher
     QUINN EMANUEL URQUHART & SULLIVAN, LLP
     51 Madison Avenue, 22nd floor
     New York, NY 10010
     (212) 849-7000 (telephone)
     (212) 849-7100 (facsimile)
     Email: dylanscher@quinnemanuel.com

     *Counsel for Defendant Charter Communications, Inc.*

18

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 17, 2021, I caused the foregoing document to be filed electronically with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record registered with CM/ECF.

*/s/ Andrew H. Schapiro*
Andrew H. Schapiro
