IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-02020-RBJ-MEH

UMG RECORDINGS, INC., *et al.*,

    Plaintiffs,
v.

CHARTER COMMUNICATIONS, INC.,

    Defendant.

---

# ORDER

---

**Michael E. Hegarty, United States Magistrate Judge.**

    Defendant has filed a Motion for Protective Order, ECF 157, as well as a Motion for Contempt and Discovery Sanctions Against OPSEC Online LLC (MarkMonitor) Pursuant to Fed. R. Civ. P. 45(g). ECF 145. I held oral argument concerning these motions via a video conference (recorded by the parties) on July 13, 2022. I make the following rulings.

    **A. Motion for Protective Order**

    The Motion for Protective Order asks the Court to prevent the deposition of Christopher Winfrey, Defendant's chief operating officer, by invoking the "apex doctrine." "Under the 'apex doctrine,' a court may protect a high-level executive officer from the burdens of a deposition upon a showing that (1) the executive has no unique personal knowledge of the matter in dispute; (2) the information sought can be obtained from another witness; (3) the information can be obtained through an alternative discovery method; or (4) severe hardship on the deponent." *Elvig v. Nintendo of Am., Inc*., No. 08-CV-02616-MSK-MEH, 2009 WL 2399930, at *2 (D. Colo. July 31, 2009).

The facts relevant to this issue are mostly uncontested. Mr. Winfrey was the beneficiary of a briefing on issues relating to this case in May 2019. The slide deck that was apparently presented at the meeting (for the benefit of Mr. Winfrey) primarily discusses video piracy but also contained information related to music piracy. Plaintiffs' argument is that Mr. Winfrey directly participated in relevant internal Charter discussions concerning the impact that music piracy had had on that industry, comparing it with the impact video piracy was having (and what its potential ultimate impact could be) on the video industry. Plaintiffs argue that while Charter knew about piracy in both media (video and music), because Charter offered video content on its own platform, and piracy of that content was directly affecting its bottom line, Charter engaged in far more deliberate efforts to stop video piracy than music piracy. At the time of the May 2019 meeting held for the benefit of, and attended by, Mr. Winfrey, the Charter I case (19-cv-00874-RBJ-MEH) was pending, and in it Plaintiffs were seeking potentially more than $1 billion in damages. Thus, the topic of music piracy would have been front and center in the minds of Charter. On the other hand, Charter argues that Plaintiffs seek Mr. Winfrey's deposition solely because he is a very high level executive, in direct violation of the apex doctrine, and that testimony concerning the contents of the slide deck and the discussion at the meeting can be better obtained from a Rule 30(b)(6) witness.

I do not believe the apex doctrine bars the proposed deposition of Mr. Winfrey. It is not clear that he does not possess unique personal knowledge of the issue of video and music piracy. In his then-position of chief financial officer, it would be logical that since he was included in what appears to be an important meeting on how Charter should respond, that the buck potentially stopped at his desk concerning Charter's course of conduct in responding to the dual piracy issues. Moreover, the financial stake of Charter would have been within his purview and responsibility,

and both the impact of piracy and the potential exposure in the Charter I lawsuit would have been indisputably important topics. Second, information about his thought processes, and the course he believed (or determined) Charter should take, would not obviously be obtainable from another witness. Third, the testimony Plaintiffs seek cannot be effectively obtained through interrogatories, requests for admission, or a Rule 30(b)(6) deposition, because developing Mr. Winfrey's knowledge of the allegation of music piracy and Charter's course of conduct responding to it would necessarily involve dynamic questioning. Finally, the Plaintiffs propose a two-hour remote deposition, so I cannot find severe hardship on Mr. Winfrey.

That said, as I have stated before, I do not believe a broad dive into video piracy is warranted under Fed. R. Civ. P. 1. The discovery I am permitting will enable Plaintiffs to make the argument that Charter's self interest guided its conduct toward video piracy vis-à-vis music piracy.

### B. Motion for Contempt

Charter served OpSec Online LLC with a subpoena duces tecum in February 2022. I have engaged in several conferences concerning Charter's allegation that OpSec has violated its obligations under Fed. R. Civ. P. 45. Based on the entire record in this case, I agree with Charter that OpSec has not meet its obligations either as to timeliness of responding, or as to completeness of its responses. Therefore, the Motion for Contempt is granted in part, insofar as the Court exercises its inherent power to create a remedy when a subpoenaed party that has been brought within the jurisdiction of the Court has unnecessary multiplied proceedings, resulting in undue cost to the subpoenaing party. As noted in the July 13, 2022 argument, once OpSec has completed its production of responsive documents, Charter may file a request for fees associated with the Motion for Contempt and the various proceedings held by the Court in relation thereto.

For the foregoing reasons, Defendant's Motion for Protective Order [filed June 20, 2022; ECF 157] is **denied**, and Charter's Motion for Contempt and Discovery Sanctions Against OPSEC Online LLC (MarkMonitor) Pursuant to Fed. R. Civ. P. 45(g) [filed May 13, 2022; ECF 145] is **granted in part** as stated herein and on the recorded hearing held on this date.

SO ORDERED.

Entered this 13th day of July, 2022, at Denver, Colorado.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge